**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**HATTIESBURG DIVISION**

**ERIC STEPHON STEWART**                                                                                                  **PLAINTIFF**

**V.**                                                                                                              **CASE NO. 2:11-CV-194-MTP**

**RON KING, et al.**                                                                                                  **DEFENDANTS**

OPINION AND ORDER

This matter is before the Court on the Defendants' Motion for Summary Judgment [51] and on the Plaintiff's Motion to Stay the Proceedings [55].  Having considered the motions, applicable law, and case record, the Court finds that this case should not be stayed and that summary judgment should be granted in part and denied in part as set forth below.

CASE BACKGROUND

Plaintiff Eric Stephon Stewart, proceeding *pro se* and *in forma pauperis*, filed his complaint pursuant to 42 U.S.C. § 1983 in this Court on September 23, 2011.  Stewart is currently serving an 8-year sentence in the custody of the Mississippi Department of Corrections ("MDOC").  The events giving rise to this lawsuit took place while Stewart was incarcerated at South Mississippi Correctional Institution ("SMCI") in Leakesville, Mississippi.  The Plaintiff brings this action against: MDOC Commissioner Christopher Epps; SMCI Superintendent Ron King; SMCI Warden Johnnie Denmark; and SMCI Officers Joy Ross and Mary Hillman.  The Plaintiff claims that Joy Ross is a lieutenant and that Mary Hillman is a watch commander at the prison.

Through his complaint and as clarified by his testimony at the *Spears*[1] hearing, Stewart alleges that the Defendants failed to protect him from harm and retaliated against him for reporting illegal officer conduct and for assisting other inmates with legal claims. According to Stewart, certain SMCI officers were supplying cell phones and drugs to inmates.

Specifically, the Plaintiff claims that in July 2011, Lieutenant Joy Ross announced to a group of inmates that Stewart had been acting as a "snitch" for two other SMCI officers. Stewart alleges that Officer Mary Hillman directed Lieutenant Ross to make the announcement and that it was designed to place him in danger. He claims that the officers' actions were done in retaliation against him for providing legal assistance to other inmates. Stewart asserts that as a result of Lieutenant Ross's announcement, other inmates assaulted him by beating him and pouring hot coffee on him. He claims that prison officials failed to protect him because they did not move him to another location within the prison to escape the attacks.

Stewart asserts that he complained to Superintendent King, Warden Denmark, and Commissioner Epps, but that they did nothing to resolve the issue. According to the Plaintiff, King became belligerent when he reported that prison officers were supplying illegal contraband to inmates. He complained to Epps and Denmark, but claims that they did not take action in the manner he wanted. In addition, Stewart asserts that he was transferred to another prison in retaliation for helping other inmates with their legal claims and for filing this lawsuit.[2] He brings this action against the Defendants in their individual and official capacities. The Plaintiff seeks monetary damages for the alleged violations of his constitutional rights.

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985) (stating that the testimony offered during an omnibus hearing supersedes the allegations made by a *pro se* plaintiff in the complaint), overruled on other grounds, *Neitzke v. Williams*, 490 U.S. 319, 324, 109 S.Ct. 1827, 1831, 104 L.Ed. 2d 338 (1989).

[2] Stewart is currently housed at Mississippi State Penitentiary ("MSP") in Parchman, Mississippi.

The Defendants have moved for summary judgment, arguing that they are entitled to Eleventh Amendment immunity and qualified immunity on the claims asserted against them and that they should be granted judgment as a matter of law. In response, Stewart argues that the Defendants should not be given immunity because they were directly responsible for the harm inflicted upon him by other inmates. He claims that the Defendants singled him out after discovering that he had helped another inmate prepare an administrative grievance and file a § 1983 claim. The Plaintiff has moved for the Court to stay the proceedings and to not rule on the Defendants' motion until he is released from prison in May 2013, and has a chance to hire a lawyer to represent him in this lawsuit.

## DISCUSSION

Rule 56 of the Federal Rule of Civil Procedure guides this Court's analysis in determining whether to grant summary judgment. Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." To overcome summary judgment, the nonmoving party must present "specific facts showing [that there is] a genuine factual issue for trial." *Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011). When ruling on a motion for summary judgment, courts must consider the record evidence and draw all reasonable inferences in the nonmoving party's favor. *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 391 (5th Cir. 2009). However, in the absence of proof, courts should not assume that the nonmoving party could have proved the necessary facts. *Id*.

In their motion, the Defendants argue that their immunity under the Eleventh Amendment bars the claims made against them in their official capacity and that qualified immunity bars the

individual capacity claims. They contend that the Plaintiff has not made a valid claim for retaliation or failure to protect, but that assuming he had, he still could not prevail on his claims because the Defendants' actions were objectively reasonable.

As to the official capacity claims, the Eleventh Amendment bars "an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity." *Perez v. Region 20 Education Service Center*, 307 F.3d 318, 326 (5th Cir. 2002). "Eleventh Amendment immunity extends to any state agency or entity deemed [to be] an 'alter ego' or 'arm' of the state." *Id.* (citing *Vogt v. Bd. of Comm'rs,* 294 F.3d 684, 688-89 (5th Cir. 2002)). A suit "against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

Section 1983 does not abrogate Eleventh Amendment immunity, *Quern v. Jordan,* 440 U.S. 332, 345 (1979); and Mississippi has not waived it, Miss. Code Ann. § 11-46-3. Therefore, the Eleventh Amendment bars the claims asserted against the Defendants in their official capacity and summary judgment should be entered in their favor.[3]

The Court next considers the claims made against the Defendants in their individual capacity. Under § 1983, government officials performing discretionary functions in their jobs are entitled to qualified immunity from civil liability to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

---

[3]*See Oliver v. Scott,* 276 F.3d, 742 (5th Cir. 2002) (stating that the Eleventh Amendment bars claims for money damages asserted against prison officials in their official capacity). A narrow exception applies under *Ex Parte Young*, which provides that a state official may be sued in his or her official capacity for injunctive relief without violating the Eleventh Amendment. 209 U.S. 123, 159-60 (1908). That exception does not apply in this case, however, because the Plaintiff only seeks monetary relief from the defendant state officials.

have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed. 2d 396 (1982). "The contours of the right [alleged to have been violated] must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed. 523 (1987)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness' of the action…assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson,* 483 U.S. at 639 (citing *Harlow,* 457 U.S. at 819).

In this case, the Plaintiff asserts that the Defendants failed to protect him from harm by not transferring him to another unit or to another facility once Lieutenant Ross told other inmates that he had been acting as a jailhouse informant. "It is well established that prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates." *Longoria v. Texas,* 473 F.3d 586, 592 (5th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33, 114 S.Ct. 1970, 1976-77, 128 L.Ed. 2d 811 (1994)). However, "every injury suffered by one prisoner at the hands of another [does not] translate[] into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. An official may be held liable for deliberate indifference to a prisoner's Eighth Amendment right to protection from violence while incarcerated if the official knows that the inmate faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847.

Lieutenant Ross and Watch Commander Hillman have submitted sworn affidavits to support the motion for summary judgment. In her affidavit, Ross states that she has "no recollection of having a confrontation with Plaintiff in which [she] broadcast to other prisoners that he was acting as a 'snitch' for the prison." Doc. [51-1]. Likewise, Hillman states that she has "no recollection of ordering Lieutenant Joy Ross to broadcast to other prisoners that Plaintiff, Eric Stewart, was acting as a snitch for the prison." Doc. [51-2]. Both officers testified that the only involvement they had with Stewart is that he was an inmate in the State penal system. Docs. [51-1] [51-2].

In response, the Plaintiff submitted a sworn affidavit wherein he states that on August 20, 2011, Lieutenant Ross, acting at the direction of Captain Hillman, told other inmates that "Eric S. Stewart was 'snitching' for Captain Sims." Doc. [53-1]. However, the claims in this lawsuit concern a statement allegedly made by Ross in July 2011. The Plaintiff has not submitted any objective evidence showing that Ross made the alleged statement or that Hillman ordered her to make it.[4] Stewart's failure to protect claim is based on the July 2011 statement, specifically, that the statement put him at risk of attack by fellow inmates. The Defendants may only be held liable for failing to protect Stewart if they knew he faced a substantial risk of harm and they did not take reasonable steps to abate it. *Farmer*, 511 U.S. at 847.

Whether Ross knew Stewart faced a substantial risk of harm turns on whether she told inmates that Stewart was a "snitch." The Plaintiff maintains that Ross made the statement,

---

[4] "[T]he legally relevant factors bearing upon the *Harlow* question [of whether qualified immunity applies] will be different on summary judgment than on an earlier motion to dismiss." *Behrens v. Pelletier*, 516 U.S. 299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). In the earlier motion, "it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness." *Id*. (internal quotations omitted). "On summary judgment, however, the plaintiff can no longer rest on the pleadings ... and the court looks to the evidence before it (in the light most favorable to the plaintiff) when conducting the *Harlow* inquiry." *Id*.

whereas Ross claims that she has no recollection of it.  Thus, there appears to be material fact issue concerning whether Ross made the July 2011 statement and its effect, if any.  Because resolution of this issue is vital to the Plaintiff's failure to protect claim against Ross, summary judgment should not be granted.

As it relates to Officer Hillman, the Plaintiff's failure to protect claim cannot pass summary judgment because he does not allege that she was personally involved in the alleged constitutional deprivation.  Stewart does not assert that he overheard Hillman ordering Ross to tell inmates that Stewart was a "snitch."  Likewise, he does not submit any evidence of Hillman giving such an order or that she otherwise knew he was in danger of being attacked by fellow inmates.  Instead, the Plaintiff relies on his own unsubstantiated assertion that Hillman directed Ross to tell inmates he was a jailhouse informant.  Without proof that Hillman knew he faced a substantial risk of harm, the Plaintiff cannot show that she violated his Eighth Amendment right to protection from harm while incarcerated.  Therefore, the Plaintiff's failure to protect claim against Hillman fails as a matter of law.

Moreover, the failure to protect claim also fails against Defendants Hillman, Epps, King, and Denmark because supervisory officials cannot be held liable under § 1983 for the actions of their subordinates.  *Thompkins v. Belt,* 828 F.2d 298, 303 (5th Cir. 1987).  Under § 1983, a supervisor may only be found liable if he is personally involved in the constitutional deprivation or if there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  *Id.* at 304.  In this case, the Plaintiff has only alleged that Lieutenant Ross put him at risk of harm by telling inmates that he was a "snitch."  The Plaintiff does not allege that the remaining Defendants were personally involved in placing him at risk or that any

Defendant participated in the attack on him by other inmates. Accordingly, the claim fails to the extent it is based on a theory of vicarious liability.[5]

The Court now turns to the Plaintiff's retaliation claim. "To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Bibbs v. Early,* 541 F.3d 267, 270 (5th Cir. 2008) (quoting *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999)).

Stewart claims that the Defendants retaliated against him for "snitching" on other officers and for helping fellow inmates prepare administrative grievances and file legal claims. However, Stewart cannot maintain his claim for retaliation because he fails to allege that the Defendants transferred him to another facility for exercising a constitutional right. The Plaintiff does not have a constitutional right to act as legal counsel to other inmates or to act as a jailhouse informant. "Prisoners have no right to a particular prisoner's help in legal matters as long as the putative recipient's constitutional right of access to the courts is not infringed." *Tighe v. Wall*, 100 F.3d 41, 43 (5th Cir. 1996). Further, prisoners have no constitutionally protected interest in being housed in a certain facility. *Id*. at 42.

Stewart does not allege that he or other inmates were denied the right of access to the courts. Instead, he argues that other SMCI inmates were deprived of his legal assistance when

---

[5] The Defendants argue in their motion that the Plaintiff also asserts a claim for failure to investigate. By Omnibus Order [48], the Court set forth the claims in this lawsuit and that order did not include a claim for failure to investigate. However, to the extent it can be interpreted that the Plaintiff alleges that the Defendants are liable for failing to investigate, such a claim does not rise to the level of a constitutional violation. *See Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005) (because plaintiff did not have a liberty interest in having grievances resolved to his satisfaction, "any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless").

the Defendants transferred him another prison.  The Plaintiff fails to allege that he was retaliated against for exercising a constitutional right.  Likewise, he fails to show that but for their retaliatory motive, the Defendants would not have transferred him.  *See Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir. 1995) ("To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident…would not have occurred").  Accordingly, the Defendants are entitled to summary judgment on the Plaintiff's claim for retaliation.

In addition, because the Defendants' conduct did not violate a clearly established right of the Plaintiff, qualified immunity applies to protect them from being held personally liable for the claims asserted against them.

The Court last considers the Plaintiff's motion to stay the proceedings.  Although the Plaintiff states that he will be released from prison in May 2013, a *sua sponte* review of the MDOC website reveals that he has a tentative release date of February 10, 2014.  Even if the Plaintiff were expected to be released at an earlier date, good cause does not exist for staying the proceedings.  The Plaintiff states that the entry of a stay will give him time to hire an attorney to represent him in this lawsuit.  However, this case has been pending for almost two years and in that time, the Plaintiff has had ample opportunity to secure counsel.  He has not moved for counsel, nor does this case present any unusual circumstances which would warrant the appointment of counsel.  *Santana v. Chandler*, 961 F.2d 514, 515 (5th Cir. 1992) (stating that the court may only appoint counsel in civil rights cases that involve "exceptional circumstances").  It would not be in the interests of justice to stay this case for an indefinite period of time so that the Plaintiff may hire an attorney.  Throughout the history of this case, the Plaintiff has demonstrated

that he is capable of effectively communicating with the Court and presenting his claims. Indeed, the Plaintiff assisted other inmates at SMCI with filing their legal claims. In light of the case record and the lack of good cause for entering a stay, the Court finds that the Plaintiff's motion to stay the proceedings is not well taken and should be denied.[6]

CONCLUSION

Based on the above analysis, the Court finds that the Eleventh Amendment bars the claims made against the Defendants in their official capacity and that qualified immunity shields the Defendants from being held personally liable for the Plaintiff's retaliation claim. The Court also finds that Defendants Hillman, King, Denmark, and Epps are entitled to summary judgment on the Plaintiff's claim for failure to protect. However, material fact issues remain concerning whether Lieutenant Ross violated the Plaintiff's Eighth Amendment right to protection from harm while incarcerated. Therefore, the Defendants' motion is denied to the extent it seeks summary judgment on the claim against Ross for failure to protect. In all other respects, the Motion for Summary Judgment [51] is granted in favor of the Defendants. The Plaintiff's Motion to Stay the Proceedings [55] is denied. A separate judgment will be entered this day pursuant to Fed. R. Civ. P. 58(a).

SO ORDERED, this the 28th day of May, 2013.

/s/MICHAEL T. PARKER
UNITED STATES MAGISTRATE JUDGE

---

[6] It should also be noted that the Plaintiff may hire an attorney at any time.